# United States Court of Appeals
## For the First Circuit

No. 16-1444

UNITED STATES OF AMERICA,

Appellee,

v.

JOSUE SOTO-SOTO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Stahl, Circuit Judges.

Eric Alexander Vos, Federal Public Defender, Vivianne M. Marrero, Assistant Federal Public Defender, Supervisor, Appeals Section, Eleonora C. Marranzini, Assistant Federal Public Defender, and Franco L. Perez-Redondo, Research and Writing Specialist, on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Juan Carlos Reyes-Ramos, Assistant United States Attorney, on brief for appellee.

May 1, 2017

**SELYA**, **Circuit Judge**.  Defendant-appellant Josue Soto-Soto appeals from a two-year sentence imposed following the revocation of a term of supervised release.  He complains that the district court erred both in stating that it had granted him "two previous opportunities" to reform his ways and in fashioning a substantively unreasonable sentence.  Finding his plaints unpersuasive, we affirm.

## I.  BACKGROUND

The relevant facts are largely uncontested.  On October 18, 2013, the appellant entered a guilty plea to a charge of being a felon in possession of a firearm.  See 18 U.S.C. §§ 922(g)(1), 924(a)(2).  The district court sentenced him to eighteen months' imprisonment, to be followed by three years of supervised release.  The appellant served the incarcerative portion of the sentence and began serving his term of supervised release on November 3, 2014.

The appellant's new status got off to a rocky start: at an intake interview, he disobeyed instructions to wait in the reception area and fled from the probation office.  Several months later, the appellant was apprehended; and, on May 19, 2015, the district court held a hearing to consider revocation of his supervised release.  In the end, the court did not revoke supervised release but, rather, attached an additional condition requiring cognitive behavioral treatment.  Nevertheless, the court

- 2 -

took pains to warn the appellant "that any future non-compliance [would] result in the revocation of his [supervised release]."

On July 7, 2015, the probation officer, by motion, informed the district court that the appellant had again violated the conditions of his supervised release. The motion noted that, on July 4, the appellant had been charged with aggravated domestic abuse, domestic abuse by means of threats, and unlawful carrying and use of bladed weapons in derogation of Puerto Rico law. See P.R. Laws Ann. tit. 8, §§ 632(d), 633; id. tit. 25, § 458d. Even though a local magistrate found probable cause to believe that these charges were well-founded, the parties agreed to dispose of the motion by adding anger management and domestic violence counseling to the existing conditions of the appellant's supervised release.

The matter came before the district court on January 15, 2016. Although the court made no express findings as to whether the conditions of supervised release had been violated, it declared that the appellant had "demonstrated a disregard and lack of commitment towards the Court and the supervision conditions." Even so, the court accepted the parties' agreement, allowed the existing supervised release term to continue, and added anger management and domestic violence counseling as additional conditions. The court took the occasion, though, to issue "a stern warning," telling the appellant bluntly that this was his "last opportunity"

and admonishing him that if he again failed to comply with his supervised release conditions, the court would "<u>not</u> <u>hesitate</u> <u>in</u> <u>revoking</u> [<u>his</u>] <u>term</u> <u>of</u> <u>supervision</u>." (Emphasis in original).

The third time was not the charm. Less than a month after the January 15 hearing, the probation officer learned that a participant in the appellant's transitional housing program claimed that the appellant had supplied him with synthetic marijuana. Moreover — after being asked to consent to a search — the appellant had left the program without authorization. Though the probation officer made arrangements for the appellant to re-enter the program, the appellant absconded.

Once the appellant was back in custody, the probation officer moved for revocation of his supervised release. On April 6, 2016, the district court convened a hearing. The appellant admitted the allegations contained in the probation officer's motion and asked the court to sentence him either to time served or — if the court was unwilling to do so — to no more than five months' imprisonment (the low end of the guideline sentencing range), without any further term of supervised release. The government demurred, pointing out that the appellant had repeatedly flouted both the probation officer's instructions and the supervised release conditions. With this tarnished record in mind, the government proposed that the court choose between two alternative dispositions. In the first instance, it recommended

imposition of the statutory maximum term of immurement — two years, see 18 U.S.C. § 3583(e)(3) — with no further period of supervised release. Should that proposal not suit the court, the government recommended, as an alternative, a sentence at the high end of the guideline sentencing range (eleven months), to be followed by a fresh term of supervised release. The probation officer agreed with the suggestion for a two-year term of immurement, counselling against a new term of supervised release because the appellant had demonstrated that he "would not follow instructions."

The district court determined that the appellant had violated the conditions of his supervised release. Relatedly, the appellant had "demonstrated that he is unable to comply with the conditions of his supervision." The court added that even though the appellant had been "granted two previous opportunities and was allowed to continue on supervision in an effort to assist him in his reintegration to the community, he did not abide by the supervision conditions." Consequently, the court revoked the existing term of supervised release.

The court then turned to sentencing. Based on the appellant's criminal history category (III) and the fact that the original offense of conviction (felon in possession) was a grade C violation, see USSG §7B1.1(a)(3), the court set the guideline sentencing range at five to eleven months, see id. §7B1.4(a). The court abjured the guideline range, however, and sentenced the

appellant to two years' imprisonment (the statutory maximum), with no new term of supervised release.  This timely appeal followed.

## II.  ANALYSIS

The appellant makes both a procedural and a substantive challenge to his sentence.  We discuss them in order.

### A.

The appellant's claim of procedural error assails the district court's characterization of the second revocation proceeding as a second chance for the appellant to get his act together.  This misperception, he says, adversely affected the court's sentencing calculus.  Preserved claims of sentencing error are typically reviewed for reasonableness, under an abuse of discretion rubric.  See Gall v. United States, 552 U.S. 38, 41 (2007); United States v. Montero-Montero, 817 F.3d 35, 37 (1st Cir. 2016).  Here, however, the appellant did not preserve the claim of procedural error that he now advances.[1]  Our review,

---

[1] To be sure, the appellant's counsel stated, at the end of the disposition hearing, that the appellant objected to the sentence as "procedurally . . . unreasonable."  No objection was raised, however, to the court's "two previous opportunities" comments.  A general objection to the procedural reasonableness of a sentence is not sufficient to preserve a specific challenge to any of the sentencing court's particularized findings.  To preserve a claim of error for appellate review, an objection must be sufficiently specific to call the district court's attention to the asserted error.  See United States v. Ríos-Hernández, 645 F.3d 456, 462 (1st Cir. 2011); United States v. Holmquist, 36 F.3d 154, 168 (1st Cir. 1994); United States v. Boylan, 898 F.2d 230, 249 (1st Cir. 1990).

therefore, is for plain error. See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). Under the plain error standard, the appellant must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. Plain error is plainly absent here.

The short of it is that the record supports the district court's characterization. The appellant's first opportunity to avoid a new prison sentence came during the May 19, 2015 revocation hearing, when the district court decided not to revoke supervised release despite the appellant's admission that he had violated some of the pertinent conditions. Instead of ordering revocation, the court allowed the appellant to remain free on supervised release. The appellant does not dispute that this outcome constituted an "opportunity," afforded to him by the court, to remain out of prison.

The crux of the matter, though, is the January 15, 2016 revocation hearing, which the district court characterized as the appellant's second blown opportunity to remain at liberty. The appellant contends that this characterization was incorrect because there was no finding that a factual or legal basis existed to revoke his supervision and send him back to prison at that time. The appellant's premise is sound: the court made no actual finding.

But the conclusion that the appellant draws from that premise does not follow.

To begin, the district court's characterization was not a post hoc afterthought: the minutes of the January 15 hearing reflect that the court expressly stated that it was granting the appellant "a last opportunity."[2]  The court's contemporaneous characterization of its own order is entitled to some weight.  Cf. Lefkowitz v. Fair, 816 F.2d 17, 22 (1st Cir. 1987) (explaining that "uncertainty as to the meaning and intendment of a district court order can sometimes best be dispelled by deference to the views of the writing judge").

In all events, the appellant cabins the word "opportunity" in a way that defies both common usage and common sense.  It is apodictic that appellate courts should "'allow a good deal of leeway' in reviewing the adequacy of a district court's explanation" of a sentencing determination.  United States v. Ofray-Campos, 534 F.3d 1, 38-39 (1st Cir. 2008) (quoting United States v. Gilman, 478 F.3d 440, 446 (1st Cir. 2007)).  Viewing the outcome of the January 15 hearing as affording the appellant an opportunity to redeem himself comports with common linguistic usage.  See, e.g., Opportunity, Merriam-Webster's Collegiate Dictionary (11th ed. 2003) (defining "opportunity" broadly as "a

---

[2] The appellant did not object to this portion of the minutes (even though he objected to a different portion of the minutes).

- 8 -

favorable juncture of circumstances"). It likewise comports with common sense. After all, the court exercised its discretion to accept a recommended outcome that permitted the appellant to remain free on supervised release without having to defend himself against the probation officer's charges. Had the court pressed ahead with those charges, the appellant would have been at risk of revocation (and, thus, of being returned to prison).

A district court, particularly when ruling from the bench, cannot be expected to use language that is "precise to the point of pedantry." Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1088 (1st Cir. 1993). As long as the court's words reflect a correct understanding of the law, the facts, and the state of proceedings, no more is exigible. See United States v. Pelletier, 469 F.3d 194, 204 (1st Cir. 2006) (finding no error, even though district court's word choice was "an awkward locution," since court clearly understood the law); cf. Dopp v. Pritzker, 38 F.3d 1239, 1244 n.5 (1st Cir. 1994) (acknowledging that trial courts need not be "letter-perfect in their syntax"). The court below satisfied this standard. When all is said and done, we find no error, plain or otherwise, in the court's characterization of the outcome of the January 15 hearing as an "opportunity" afforded to the appellant.[3]

---

[3] For the sake of completeness, we note that the appellant actually received a third opportunity when — less than a month

This leaves the appellant's claim that his two-year sentence is substantively unreasonable.  Inasmuch as this claim was raised below, our review is for abuse of discretion.  See United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir.), cert. denied, 136 S. Ct. 258 (2015).

The touchstone of abuse of discretion review in federal sentencing is reasonableness.  See Gall, 552 U.S. at 46.  In this context, "reasonableness is a protean concept, not an absolute." United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008).  An inquiry into the substantive reasonableness of a sentence must "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range."  Gall, 552 U.S. at 51.  The test is whether the sentence reflects "a plausible sentencing rationale and a defensible result."  Martin, 520 F.3d at 96.

Here, our analysis starts with the relevant statutory framework.  Congress enacted 18 U.S.C. § 3583(e) to guide a sentencing court in the exercise of its discretion when imposing, inter alia, a sentence following the revocation of a term of

---

after the January 15 revocation hearing — he flouted his supervised release conditions and left his transitional housing program without authorization.  Rather than notifying the court of this lapse, the probation officer simply arranged for the appellant to re-enter the program.

supervised release.  "The maximum sentence for a person who violates the conditions of his supervised release varies based on the severity of 'the offense that resulted in the term of supervised release.'"  United States v. Fontanez, 845 F.3d 439, 445 (1st Cir. 2017) (quoting 18 U.S.C. § 3583(e)(3)).  For this purpose, offenses are grouped in various categories.  See 18 U.S.C. § 3583(e)(3).  The parties agree that the underlying offense in this case (felon in possession) is a class C violation, which bears a maximum two-year sentence upon revocation of supervised release. See id.

Section 3583 incorporates by reference some, but not all, of the sentencing factors limned in 18 U.S.C. § 3553(a).  See United States v. Vargas-Dávila, 649 F.3d 129, 131 (1st Cir. 2011). These incorporated factors include the nature of the offense, 18 U.S.C. § 3553(a)(1); the offender's history and characteristics, id.; the need for deterrence, id. § 3553(a)(2)(B); and the need to protect the public, id. § 3553(a)(2)(C).  Although the court must mull all of the incorporated factors, "it need not do so mechanically."  Vargas-Dávila, 649 F.3d at 131.

In the case at hand, the appellant asseverates that his sentence is substantively unreasonable because his supervised release was never before revoked and the sentencing record shows no "plausible explanation" for the sentence.  The force of this asseveration is undercut to a significant extent by the appellant's

- 11 -

course of conduct. Actions have consequences, and the appellant's actions gave the district court ample reason to believe that only a substantial sentence would deter him from his wayward practices. By the same token, the appellant's actions showed that he was a particularly poor candidate for a further term of supervised release. As the court observed, from the very beginning, the appellant "demonstrated that he [was] unable to comply with the conditions of his supervision." This assessment was borne out by the probation officer, who recommended that the appellant not be given any term of supervised release because "he [did] not cooperate or commit[] to the terms at all."

Even without any consideration of the incidents that prompted the second revocation hearing,[4] the record makes manifest that the appellant was a serial violator of the conditions of supervised release. He repeatedly left his transitional housing program without authorization and failed, on several occasions, to follow his probation officer's instructions. What is more, the appellant was explicitly warned, during both the first and second hearings, that any further violations would result in the

---

[4] The district court's sentencing rationale did not address whether or not the appellant actually committed the infractions alleged in the motion that sparked the January 15 revocation hearing. Instead, the court relied mainly on facts such as that the appellant showed "poor judgment" and "repeated[ly] failed to cooperate with the probation officer, the supervision strategies and the work plan set out for him." Those discerned facts find firm footing in the record.

revocation of his supervised release (and, thus, in additional prison time). These warnings went unheeded, and the court acted well within its discretion in giving heavy weight to this checkered history.

The court's rationale plainly justified a substantial sentence. We recognize that the court proceeded to impose a statutory maximum two-year sentence, notwithstanding that the guideline sentencing range topped out at eleven months of incarceration. See USSG §7B1.4(a). But the guideline ranges with respect to sentences for revocation of supervised release are merely advisory, see United States v. Work, 409 F.3d 484, 492 (1st Cir. 2005) (citing USSG §§7B1.1-7B1.5), and the court had the authority to vary upward from the applicable range so long as the circumstances justified such a variance. We think that they did: a high-end guideline sentence would in all likelihood have carried with it a new supervised release term, see 18 U.S.C. § 3583(h), and the appellant had given the court reason to believe that a new term of supervised release would be fruitless. In view of the appellant's demonstrated unwillingness to comply with conditions of supervised release, the court's decision to eschew a new term of supervision and instead impose a lengthier sentence seems altogether appropriate.

The upshot, then, is that the court articulated a plausible sentencing rationale and reached a defensible result.

It considered the proper mix of sentencing factors (including the appellant's history and characteristics, the seriousness of the offense, promoting respect for the law, providing just punishment, and furthering deterrence) and concluded that the "statutory maximum term in this case [was] warranted."  On this record, the two-year sentence — though severe — did not "fall[] outside the 'expansive boundaries' of the entire range of reasonable sentences."  Vargas-Dávila, 649 F.3d at 130 (quoting Martin, 520 F.3d at 92).

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, the sentence is

**Affirmed.**