# United States Court of Appeals
## For the First Circuit

---

No. 18-1152

UNITED STATES,

Appellee,

v.

FABIAN VILORIA-SEPULVEDA, a/k/a Fabian Vilora-Sepúlveda,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge]

---

Before

Howard, Chief Judge,
Lynch and Lipez, Circuit Judges.

---

Mariem J. Paez on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Francisco A. Besosa-Martínez, Assistant United States Attorney, on brief for appellee.

---

April 16, 2019

---

**LYNCH, Circuit Judge.**  Fabian Viloria-Sepulveda pled guilty to illegal possession of a machine gun in violation of 18 U.S.C. § 922(o).  The district court sentenced Viloria-Sepulveda to sixty months' imprisonment, a sentence above the applicable guidelines sentencing range (GSR) but below the statutory maximum of ten years.  18 U.S.C. § 924(a)(2).

Viloria-Sepulveda challenges this sentence on procedural and substantive grounds.  Procedurally, he contends that the district court erred in considering two types of evidence: (1) photographs found on the defendant's cell phone showing the defendant and others handling drugs, drug paraphernalia, and guns, including military-style assault weapons, and (2) information about the pervasiveness of guns and gun violence in Puerto Rico.

We affirm.

I.

Puerto Rico police officers from the Drug Division of San Juan had a member of a violent drug trafficking organization under physical surveillance on January 30, 2017.  The officers conducting the surveillance saw a Toyota Corolla escorting the gang member's car.  Viloria-Sepulveda was the driver of the Toyota, as the police would later discover.

The officers did a record check of the Toyota's license plates.  Learning that the Toyota had been reported missing and should be recovered, the police stopped the car.  As the officers

neared the front driver's side window, they watched Viloria-Sepulveda (who was sitting in the driver's seat) attempt to put a firearm inside a bag on the front passenger seat. The officers ordered Viloria-Sepulveda to roll down the window, but he instead persisted in trying to hide the firearm. So the officers told Viloria-Sepulveda to step out of the car, which he did, and they placed him under arrest.

The officers determined that the gun recovered from the bag was a Glock 34 pistol modified to shoot automatically and loaded with an extended magazine containing twenty-four bullets. Viloria-Sepulveda volunteered to the officers that the weapon was his.

A search of the Toyota uncovered another extended magazine (with twenty-four rounds of ammunition) for the Glock, a face mask, a drug ledger, walkie talkies, and three cell phones. A search (to which Viloria-Sepulveda consented) of one of the cell phones and its applications, including a messaging application called WhatsApp, uncovered multiple photographs of Viloria-Sepulveda and others carrying firearms of different types, including assault-style weapons; of drug ledgers; of a scale; and of substances in plastic bags and in vials.

A federal grand jury in Puerto Rico indicted Viloria-Sepulveda on one count of illegal possession of a machine gun. See 18 U.S.C. §§ 922(o), 924(a)(2). Viloria-Sepulveda entered a

straight guilty plea. He also forfeited the firearm and the ammunition.

The Probation Office prepared a presentence report (PSR), which found a Total Offense Level of 15 and a Criminal History Category of I. Based on these calculations, the PSR calculated a GSR of eighteen to twenty-four months.

In its sentencing memorandum, the government agreed with the PSR's calculations but argued for an upwardly variant sentence of forty-eight to sixty months based on the nature of the offense, the defendant's characteristics, and the need for deterrence and for protection of the public from future crimes by the defendant. It stressed that Viloria-Sepulveda "was heavily armed with" a machine gun and "two extended magazines" and argued that Viloria-Sepulveda's proximity to the violent gang member under surveillance, as well as Viloria-Sepulveda's possession of the walkie talkies, drug ledger, and face mask were "all evidence that [Viloria-Sepulveda] was part of a violent criminal gang willing to conduct its operations, and protect one another, on a public street in broad daylight." Further, the memorandum argued that the nature of the offense and the photographs on the defendant's cell phone showed that he was "an individual with a penchant for high-capacity firearms, drugs, and criminal activity."

Finally, the government urged that the pervasiveness of guns and gun violence in Puerto Rico justified an upward variance

- 4 -

to ensure adequate deterrence and to protect the public from future crimes by the defendant.  The memorandum observed that the homicide rate from gun violence in Puerto Rico was among the highest in the world and stated, based on FBI statistics, that Puerto Rico's murder rate is the second-highest in the United States.

Viloria-Sepulveda's sentencing memorandum agreed with the PSR's guidelines sentencing calculations but argued that an upward variance was not warranted.  Specifically, he objected to the government's reliance on any photographs sent to the defendant through a group chat he was a member of on WhatsApp, saying that it would be inappropriate to "presuppose[] that Mr. Viloria[-Sepulveda] personally participated in taking the photographs and video and that therefore he had access to the narcotics, firearms, and other items depicted in said photographs."  The memorandum also claimed that many of the photographs depicted innocent conduct, as they were taken during the recording of music videos for local artists.  Finally, Viloria-Sepulveda's memorandum highlighted that he was a father, had a record of employment, and was a first-time offender.

At the sentencing hearing on January 26, 2018, the government reiterated its arguments for an upwardly variant sentence of between forty-eight and sixty months.  The district court "recogize[d] that Puerto Rico is a hot spot for weapons, especially those that contain the chips which make them fully

automatic as machine guns."  It also rejected Viloria-Sepulveda's objections to the photos.

The district court accepted the PSR's guidelines calculations and GSR.  It noted that it had "considered all of the [18 U.S.C. § 3553] sentencing factors," emphasizing "the need to promote respect for the law and protect the public from further crimes by defendant" and "the issues of deterrence and punishment." After describing the offense, the evidence in the Toyota, and the photographs, the district court observed that the defendant was connected to "what the Court consider[s] to be" criminal activity. Based on all of these considerations, the district court sentenced Viloria-Sepulveda to sixty months' imprisonment with three years of supervised release.  Viloria-Sepulveda's counsel then "state[d] for the record that we object to the sentence imposed both on procedural and substantive grounds," without further elaboration.

## II.

Preserved claims of procedural and substantive sentencing error are reviewed under an abuse of discretion standard.  See Gall v. United States, 552 U.S. 38, 55 (2007); United States v. Soto-Soto, 855 F.3d 445, 448 (1st Cir. 2017). Viloria-Sepulveda's claim of substantive error, made in the district court, is undoubtedly preserved, and is reviewed under that standard.

Viloria-Sepulveda preserved only one of his two procedural objections. He argued in his sentencing memorandum and at the hearing that the photographs were not his or that they depicted scenes from music videos. The second of those objections was similar enough to the issue raised here -- that it had not been established that the photographs depicted illegal conduct -- to put the district court on fair notice, preserving the issue. See United States v. Ríos-Hernández, 645 F.3d 456, 462 (1st Cir. 2011). But Viloria-Sepulveda raises his objection to the consideration of community factors for the first time on appeal. See United States v. Matos-de-Jesús, 856 F.3d 174, 177 (1st Cir. 2017) ("A general objection to the procedural reasonableness of a sentence is not sufficient to preserve a specific challenge to any of the sentencing court's particularized findings." (quoting Soto-Soto, 855 F.3d at 448 n.1)). That unpreserved claim is reviewed for plain error.[1] Id.

We find no error, let alone plain error, and no abuse of discretion in the sentence. Turning first to the procedural challenges, we emphasize a few principles at the outset.

---

[1] "Under the plain error standard, the appellant must show '(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'" Soto-Soto, 855 F.3d at 448 (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

III.

A sentencing judge, "draw[ing] upon his familiarity with a case[ and] weigh[ing] the factors enumerated in 18 U.S.C. § 3553(a)," may "custom-tailor an appropriate sentence" above the applicable GSR. United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013) (citing Kimbrough v. United States, 552 U.S. 85, 109 (2007)). When a court does depart from the GSR, "its reasons for doing so 'should typically be rooted either in the nature and circumstances of the offense or the characteristics of the offender.'" Id. at 21 (quoting United States v. Martin, 520 F.3d 87, 91 (1st Cir. 2013)); see also 18 U.S.C. § 3553(a) (calling for consideration of the "history and characteristics" of the defendant, among other factors).

Congress has mandated that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. "The intent of Congress" in instructing this "was clearly to leave wide open the information . . . at sentencing. The only qualifier imposed is that the information . . . be reliable." United States v. Rodriguez-Cardona, 924 F.2d 1148, 1155 (1st Cir. 1991); see also United States v. Acevedo-Lopez, 873 F.3d 330, 340 (1st Cir. 2017); United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010).

Section 3553(a) in particular "invite[s] the district court to consider, broadly," United States v. Politano, 522 F.3d 69, 74 (1st Cir. 2008), any reliable information relevant not only to the "history and characteristics" of the defendant but also to factors such as the "seriousness of the offense," the need "to afford adequate deterrence to criminal conduct," and the need "to protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a); see also, e.g., United States v. Rivera-Berríos, 902 F.3d 20, 27 (1st Cir. 2018) (recognizing the "broad discretion" granted by § 3553(a)). This framework not only renders appropriate but actually encourages the sentencing court's consideration of the evidence objected to here.

The photographs, whose authenticity Viloria-Sepulveda does not challenge, conveyed reliable information about the defendant relevant to his sentence for illegal possession of a machine gun. The district court appropriately concluded that the fact that Viloria-Sepulveda had saved numerous photographs (some including him) of firearms, drugs, and drug paraphernalia, or had been sent such photographs on WhatsApp, signaled his past participation in or propensity for illegal or violent activities involving drugs and firearms. See Acevedo-Lopez, 873 F.3d at 340 (no error in relying on text messages, photographs, video, and other evidence related to past violent incident to upwardly vary sentence). This conclusion was further supported by similar

evidence found in Viloria-Sepulveda's car (in which he was escorting a known member of a violent drug gang) -- including not only the machine gun and ammunition but also a face mask, three cell phones, walkie talkies, and a drug ledger. In short, the district court certainly did not abuse its discretion in relying on photographs and possessions indicative of the defendant's associations with violent and illegal conduct in upwardly varying his sentence. See Acevedo-Lopez, 873 F.3d at 340; United States v. Quiñones-Meléndez, 791 F.3d 201, 205 (1st Cir. 2015) (no error in basing sentence on evidence in PSR and elsewhere indicating that the defendant was a "very dangerous individual"); United States v. Gallardo-Ortiz, 666 F.3d 808, 815 (1st Cir. 2012) (similar).

In the district court, Viloria-Sepulveda argued that the images were either not his or that they depicted innocent conduct. But the district court was free to find otherwise, as it did. See, e.g., United States v. Oliveira, 907 F.3d 88, 91-92 (1st Cir. 2018) (sentencing court's factual finding reviewed for clear error). "[I]f he had nothing to do with it, why would somebody send him that; just for the fun of it?," the district court astutely said. "It's improbable[.]" And, as the district court rightly observed, it "stretch[es] . . . credibility" to view images containing "all this weaponry" as innocent depictions of scenes from a music video shoot.

On appeal, Viloria-Sepulveda attempts to characterize the images as irrelevant or unreliable because "it cannot be established by the pictures that the firearms violated any federal statute." Not so, and the argument misses the point in any event. The district court did not err in finding that the pictured weapons, some of which looked like "high-powered AK-47s," were likely possessed illegally. Further, as we stated, images associating the defendant with drugs, drug-related items, and weapons (whatever the status of those weapons under federal law) could be used in upwardly varying his sentence, as they are evidence of relevant history and characteristics. See Gallardo-Ortiz, 666 F.3d at 815.

The district court also did not err in considering the problem of gun violence in Puerto Rico and that "Puerto Rico is a hot spot for weapons." Community considerations such as the prevalence of weapons and of violent crime can justify upwardly varying a sentence for a gun possession conviction. See Flores-Machicote, 706 F.3d at 22-23 (no error in relying on "Puerto Rico's escalating murder rate and other local criminal trends" in upwardly varying a sentence for gun possession); United States v. Fuentes-Echevarria, 856 F.3d 22, 26 (1st Cir. 2017) (no error relying on the fact of an "arsenal [of weapons] out there in the streets" in upwardly varying a sentence for a conviction under § 922(o) (alteration in original)); United States v. Millán-Roman, 854 F.3d

- 11 -

75, 79 (1st Cir. 2017) (similar); <u>United States</u> v. <u>Lozada-Aponte</u>, 689 F.3d 791, 793 (sentencing judge's discussion of "incidence of crime in Puerto Rico" was a "permissible consideration[] in varying from the guidelines"); <u>cf.</u> <u>United States</u> v. <u>Landry</u>, 631 F.3d 597, 607 (1st Cir. 2011) (no error in relying on the growth of identity theft in Maine to impose high-end guidelines sentence).

The pervasiveness of guns and the level of violence in the local community are connected to the determinations that a sentencing judge must make under § 3553(a)(2). As we explained in <u>United States</u> v. <u>Flores-Machicote</u>, 706 F.3d 16 (1st Cir. 2013), "the incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence," a factor that must be weighed under § 3553(a)(2). <u>Id.</u> at 23; <u>see also</u> <u>Politano</u>, 522 F.3d at 74. A sentencing judge may also reasonably conclude that the need to promote respect for the law and to protect the public from future crimes by the defendant is greater in areas hardest hit by guns and violence, <u>see</u> 18 U.S.C. § 3553(a)(2)(A)-(B) -- "and this may translate into a stiffer sentence," <u>Flores-Machicote</u>, 706 F.3d at 23.

The district court did not, as Viloria-Sepulveda argues, overemphasize these community concerns at the expense of individual ones. <u>See</u> <u>id.</u>; <u>see also, e.g.</u>, <u>United States</u> v. <u>Rivera-González</u>, 776 F.3d 45, 50-51 (1st Cir. 2015). A review of the district court's explanation makes this abundantly clear. The

district court mentioned the community concerns only once. Otherwise, it considered the nature of this offense, particularly the fact that the defendant's weapon was "a machine gun, that is, a Glock pistol, .45 caliber, that had been modified to shoot automatically more than one shot without manual reloading, and that was by a single function of the trigger." The district court also considered the images found on the defendant's phone and the evidence in his car. It addressed Viloria-Sepulveda's acceptance of responsibility, that this was his first conviction, that he had three dependents, and that he had "obtained his GED and was performing odd jobs before his arrest."[2] The district court confirmed that it had "considered all of the" § 3553(a) factors as they related to the defendant.

Finally, the explanation just recounted justified the district court's imposition of an upwardly variant sentence of sixty months. That this five-year term of imprisonment is substantively reasonable is also evident from the fact that Congress has authorized a term of imprisonment of up to ten years for this offense. See 18 U.S.C. §§ 922(o), 924(a)(2). Viloria-

---

[2] Viloria-Sepulveda argues that the district court afforded too little importance to potentially mitigating personal characteristics like these. But the sentencing court has broad discretion in weighing and balancing the § 3553(a) factors, and we see no abuse of discretion in the weight assigned here. United States v. Gierbolini-Rivera, 900 F.3d 7, 15 (1st Cir. 2018).

Sepulveda's sentence falls within the "universe of reasonable sentences." Rivera-González, 776 F.3d at 52.

Affirmed.