# United States Court of Appeals
## For the First Circuit

No. 21-1863

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERTO M. MELENDEZ-HIRALDO, A/K/A COCODRILO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lipez and Montecalvo, Circuit Judges,
Burroughs,* District Judge.

Jose Luis Novas-Debien on brief for appellant.
W. Stephen Muldrow, United States Attorney; Mariana E.
Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate
Division; and Maarja T. Luhtaru, Assistant United States Attorney,
on brief for appellee.

September 21, 2023

---

* Of the District of Massachusetts, sitting by designation.

**MONTECALVO, Circuit Judge**.  Roberto M. Melendez-Hiraldo ("Melendez") appeals from a 194-month sentence imposed after he pled guilty to using, carrying, brandishing, and discharging a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and (2).  Melendez challenges the procedural and substantive reasonableness of his sentence.  Having discerned no error, we affirm.

## I.    Background[1]

On June 8, 2018, Melendez was involved in the kidnapping and murder of a rival gang member, referred to by the parties as "WGE."  WGE had been threatening members of Melendez's gang, so Melendez, with four other members of his gang, participated in the killing of WGE to support the gang.

On the day of the murder, Melendez traveled with members of his gang to the public housing complex where WGE lived.  Armed with guns, Melendez and his codefendants forced WGE out of his home and into a Toyota Camry.  WGE was transported in the Camry to Barraza's Ward by a codefendant.  Other codefendants, along with Melendez, traveled in a separate vehicle to Barraza's Ward.  While he remained in the car, Melendez watched two codefendants take WGE

---

[1]    Because this sentencing appeal follows a guilty plea, we draw the relevant facts from the plea agreement, the undisputed portions of the-change-of-plea colloquy, the presentence investigation report ("PSR"), and the sentencing record.  See United States v. Spinks, 63 F.4th 95, 97 (1st Cir. 2023).

- 2 -

out of the Camry and saw them shoot WGE multiple times. Although Melendez did not shoot WGE, a cooperating witness alleged that Melendez and another codefendant gave a revolver to the person who first shot WGE.[2]

On August 19, 2020, Melendez and four codefendants were charged in a three-count second superseding indictment (the "indictment") for the kidnapping and murder of WGE. The indictment charged Melendez with kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) and (2); using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and (2); and using, carrying, and discharging a firearm during and in relation to a crime of violence causing murder, in violation of 18 U.S.C. § 924(j)(1) and (2).

On June 21, 2021, Melendez pled guilty to count two of the indictment, and in exchange the government agreed to dismiss the remaining counts. Pursuant to the plea agreement, the parties stipulated that Melendez's guidelines sentence was 120 months, the minimum term of imprisonment required by statute. The parties also agreed to jointly recommend a sentence of 164 months, to be

---

[2] Melendez did not file formal objections to the PSR, but, at sentencing, he challenged this statement. The sentencing court rejected his objection and relied on the cooperating witness's statement at sentencing. On appeal, Melendez does not challenge the district court's finding.

served consecutively with a previously imposed 46-month sentence Melendez had received in an unrelated federal case.[3]  Finally, Melendez stipulated to the statement of facts incorporated into the plea agreement.  The court accepted Melendez's change of plea.

Melendez's sentencing followed. Pursuant to the plea agreement, Melendez and the government jointly recommended a 164-month sentence for the firearms offense.  At the hearing, Melendez defended the recommendation before the court, arguing that 164 months was "more than sufficient punishment," particularly given certain mitigating factors discussed in his sentencing memorandum, including "his family background, or lack thereof, . . . [the fact that] he's the first to plead guilty, [and data showing] people age out of crime."

The district court stated twice that the applicable guidelines sentence for the single count was 10 years, or 120 months, and acknowledged that the parties had agreed to a variant sentence of 164 months.  It also referenced Melendez's age, employment history, ninth grade education, and history of drug use as factors relevant to his sentencing.

Before weighing in on the appropriate sentence, the court summarized the offense and detailed Melendez's criminal

---

[3]     In criminal case No. 18-581, Melendez pled guilty to violating 18 U.S.C. § 922(g)(1) by illegally possessing a firearm three months after the killing of WGE.

history. Along the way, the court calculated the applicable number of criminal history points that Melendez would have accrued for each conviction, noting that Melendez scored additional points for the instant conviction because he committed it while on escape status. In the end, the court concluded that Melendez "could have scored eight criminal history points, establishing a criminal history category of four," but added that "criminal history points . . . do not apply for this firearm conviction."

Next, having heard from the parties and considered the relevant sentencing factors, the district court announced that it would not be adopting the joint recommendation because it "agree[d] with the probation officer" that a 164-month sentence did not adequately "reflect the seriousness of the offense, does not promote respect for the law, does not protect the public from further crimes by . . . Melendez, and does not address the issues of deterrence and punishment."[4]

A detailed description of the offense followed. After describing the kidnapping, the court focused on the brutality of

---

[4] During this colloquy, the court stated: "[t]he parties agreed to recommend a varian[t] sentence . . . well, actually it's not a varian[t] sentence. It's within -- it's 10 months to life." We treat this as a misstatement where earlier in the hearing the court properly noted that "[t]he guideline sentence is the minimum term of imprisonment required by statute, which, in this case, is a minimum term of imprisonment of 10 years," or 120 months. We therefore proceed with the understanding that the court understood it was imposing an upwardly variant sentence.

the murder, noting that "the victim received 10 shots to the head and 12 to his upper body," and that even after he was "shot to the head and dropped to the floor," he "receiv[ed] multiple shots." The court also noted that just before WGE was murdered, the codefendant who fired the first shot said, "Llego tu dia" ("[y]our day had arrived").  The court added that "Melendez and [another] codefendant" were responsible for "giv[ing] a revolver" to the first shooter.

When it finished detailing the kidnapping and murder, the court remarked:

> Accordingly -- again, the [c]ourt agrees with the probation officer [that the joint recommendation is inadequate]. . . . Accordingly, it is the judgment of the [c]ourt, [that] . . . Melendez . . . is committed to the custody of the Bureau of Prisons to be imprisoned for a term of 194 months to be served consecutively to the 46-month sentence imposed on him in Criminal [Case] No. 18-581, for a total sentence of 240 months of imprisonment. . . . Upon release . . . Melendez shall be placed on supervised release for a term of five years.

Melendez objected and this timely appeal followed.[5]

---

[5]     Pursuant to Melendez's plea agreement, the government asked the court to dismiss all remaining counts in this case and the companion criminal case, 18-cr-0451 (FAB), against him.  The court granted the government's request and dismissed the remaining counts.

## II.  Discussion

We ordinarily review preserved claims of sentencing error for abuse of discretion.  United States v. Montero-Montero, 817 F.3d 35, 37 (1st Cir. 2016).  "That review typically starts with claims of procedural error."  Id.  Such errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range."  Gall v. United States, 552 U.S. 38, 51 (2007).

Assuming the sentence is procedurally sound, we then consider the substantive reasonableness of the sentence under an abuse of discretion rubric.  Id.  A sentence is substantively reasonable if it "reflects 'a plausible sentencing rationale and a defensible result.'"  United States v. Rossignol, 780 F.3d 475, 477 (1st Cir. 2015) (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)).  "[O]ur review is limited to determining whether [the district court's] sentence, 'in light of the totality of the circumstances, resides within the expansive universe of reasonable sentences.'"  Id. (quoting United States v. King, 741 F.3d 305, 308 (1st Cir. 2014)).

But when a defendant fails to preserve a claim of procedural or substantive error below, we review for plain error.

Montero-Montero, 817 F.3d at 37. "To succeed under plain error review, an appellant must show '(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the [appellant's] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'" Id. (alteration in original) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

### A.    Procedural Reasonableness

Melendez lodges several challenges to the procedural reasonableness of his sentence. He contends that the district court erred by (1) making conflicting statements about his applicable guidelines sentence; (2) failing to consider relevant mitigating factors; (3) not providing specific reasons for upwardly varying beyond the parties' recommended sentence; (4) failing to identify its reasons for imposing an upwardly variant sentence; and (5) not stating clearly whether it was departing or varying from the applicable guidelines sentence.

As a threshold matter, the government argues that Melendez waived his procedural challenges because he failed to preserve his claims below and did not address the plain error standard in his opening brief. "To preserve a claim of procedural sentencing error for appellate review, a defendant's objection need not be framed with exquisite precision." United States v. Rivera-Berríos, 968 F.3d 130, 134 (1st Cir. 2020) (citing United

States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017)). It must, however, be "sufficiently specific to call the district court's attention to the asserted error." Id. (quoting Soto-Soto, 855 F.3d at 448 n.1).

Here, after the court handed down the sentence, Melendez made the following objection:

> We object to, first of all, the recitation of facts. My client only accepts the stipulation of facts as entered into the plea agreement . . . . There are no proper reasons for the excessively upward variance in the [c]ourt's sentence. As the [c]ourt noted, the proper guideline for the charge is 120 months. The parties came up with an already-included variance as a recommendation of 44 months, which is a total of 164 months. 924(c) convicts have a lower risk[] of recidivism as per US Sentencing Commission studies.
>
> And for those reasons . . . we object to the sentence[] and will entertain the possibility of appealing the variance that was handed down of 30 months on top of the recommended sentence.

Because Melendez alerted the court to a perceived deficiency in its justification for varying upward, he preserved the two related claims: (1) that the district court failed to provide specific reasons for varying upward beyond the parties' recommended sentence and (2) that the district court did not identify its reasons for the upward variance. See Rivera-Berríos, 968 F.3d at 134 (concluding that defendant preserved his procedural claim where "appellant's counsel made clear that he believed that the

- 9 -

sentence was 'excessive' and that the court had not articulated any cognizable grounds that would support an upward variance").

Because the objection does not reach the subject matter of Melendez's three remaining procedural challenges,[6] those claims are subject to plain error review. But Melendez "does not attempt to satisfy that standard of review" in his opening brief. United States v. Rodriguez-Monserrate, 22 F.4th 35, 40 (1st Cir. 2021). And even in the face of the government raising this deficiency, Melendez forewent the opportunity to explain by opting not to reply. Melendez has therefore waived his unpreserved claims. Id.

We review the two surviving procedural claims for abuse of discretion. Soto-Soto, 855 F.3d at 448 ("Preserved claims of sentencing error are typically reviewed for reasonableness, under an abuse of discretion rubric."). This is a multifaceted standard whereby "we apply clear error review to factual findings, de novo review to interpretations and applications of the guidelines, and abuse of discretion review to judgment calls." United States v. Nieves-Mercado, 847 F.3d 37, 42 (1st Cir. 2017).

Melendez argues that the court erred in imposing an upwardly variant sentence without stating the specific reasons for doing so. And that likewise, the court failed to explain why it

---

[6] The remaining claims are: (1) improper understanding of the guidelines range, (2) failure to address mitigating factors, and (3) lack of clarity on whether the court was departing or varying.

imposed a sentence exceeding the parties' already upwardly variant joint recommendation of 164 months of incarceration.

A court commits "significant procedural error" by "failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range," Gall, 552 U.S. at 51 -- but has no independent obligation to explain its decision not to adopt a joint recommendation, United States v. Flores-Nater, 62 F.4th 652, 657 (1st Cir. 2023) ("[T]he court was not required to explain why it rejected the . . . upwardly variant sentence recommended by the parties."). Accordingly, we need only address whether the court adequately explained the variance.

Melendez was sentenced to 194 months in prison, 74 months over the 120-month statutory minimum sentence -- which is also the guidelines sentence -- and 30 months over the parties' 164-month joint recommendation.

When a sentence exceeds the applicable guidelines range, as it did here, "[the court] must justify the upward variance" by "articulat[ing] why it believe[s] that the appellant's case differ[s] from the norm." United States v. Del Valle-Rodríguez, 761 F.3d 171, 176, 177 (1st Cir. 2014). The exact parameters of this requirement fluctuate because "the greater a deviation from the [guidelines sentencing range], the more compelling the sentencing court's justification must be." Id. at 177 (citing

- 11 -

United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006)). Here, the court provided an adequate explanation for the level of variance.

Typically, we look for an express justification. And to be sure, here, the court's express explanation consisted of the type of boilerplate explanation that we have deemed insufficient before:

> [T]he [upwardly variant] sentence recommended by the parties does not reflect the seriousness of the offense, . . . promote respect for the law, . . . protect the public from further crimes by . . . Melendez, and . . . address the issues of deterrence and punishment.

Generic explanations like this that "simply rehearse[] -- but d[o] not apply -- certain of the factors that Congress has instructed courts to consider in imposing sentences" are inadequate because they do not satisfy "the requirement that an upward variance be '[]moored [to] individual characteristics of either the offender or the offense of conviction.'" Flores-Nater, 62 F.4th at 656 (alterations in original) (quoting Rivera-Berríos, 968 F.3d at 137); see also United States v. Franquiz-Ortiz, 607 F.3d 280, 282 (1st Cir. 2010) (providing defendant-specific reasons for sentencing decision is necessary to produce "a record that provides a basis for evaluating the district court's exercise of its broad authority"). But if the court's rationale can be "teased from the sentencing record," we consider the requirement satisfied. Flores-Nater, 62 F.4th at 656.

Here, the court's rationale for imposing the 194-month sentence is apparent from the record. After rejecting the parties' recommended sentence, the court recounted the horrific details of the murder and emphasized Melendez's participation by noting he "had given a revolver to the person who first shot the victim." The court signaled that these details weighed heavily in its decision to impose a harsher sentence than the one recommended by the parties, and also referenced its agreement with the probation officer's position that the jointly recommended sentence was inadequate, before concluding that a 164-month sentence was insufficient to achieve the goals of sentencing. From this, we draw the fair inference that the upwardly variant sentence was predicated on the court's belief that the recommended sentence -- and thus the guidelines -- failed to account for the gravity of the offense conduct.

The court's rationale was also adequate. The rationale passes muster if it identifies "idiosyncratic facts [that] 'remove[] th[e] case from the heartland of the applicable guideline provisions.'" United States v. Bruno-Campos, 978 F.3d 801, 806 (1st Cir. 2020) (quoting United States v. Díaz-Lugo, 963 F.3d 145, 155 (1st Cir. 2020)). Here, the applicable guideline sets the sentence for defendants "convicted of violating section 924(c)" as "the minimum term of imprisonment required by statute" regardless of the severity of the underlying crime or the individual

- 13 -

characteristics of the defendant.  U.S.S.G. § 2K.2.4(b). Indeed, unless exempted, the guidelines sentence applies so long as the defendant was convicted of "us[ing] or carr[ying] a firearm" "during and in relation to any crime of violence." 18 U.S.C. § 924(c)(1)(A). In this case, the crime of violence was "kidnapping resulting in death."  But to be convicted under 18 U.S.C. § 924(c)(1)(A)(iii), a death need not result from the crime of violence.  And the fact that the crime of violence resulted in death here was not accounted for anywhere in the guidelines calculation because, pursuant to U.S.S.G. § 2K.2.4(b), the guidelines sentence was the minimum term of imprisonment required by statute.[7]  Accordingly, because "[Melendez]'s situation is different from the ordinary situation covered by the guidelines calculation," Bruno-Campos, 978 F.3d at 806 (quoting United States v. Zapete-Garcia, 447 F.3d 57, 60 (1st Cir. 2006)), a variance was proper.  Nor can we fault the district court for concluding that a roughly six-year variance was warranted in light of the severity

---

[7]  To be sure, Melendez was also initially charged with a separate count of brandishing a firearm during or in relation to a "[c]rime of [v]iolence [c]ausing [m]urder."  But that charge was dismissed pursuant to the plea agreement and Melendez ultimately pled to the single, lessor count requiring only a "crime of violence."  "A sentencing court may take into account relevant conduct underlying counts dismissed as part of a plea negotiation as long as that conduct was not used in constructing the defendant's guideline range."  United States v. Fernández-Garay, 788 F.3d 1, 7 (1st Cir. 2015).

of the crime, which resulted in a death.  We therefore discern no error.

### B.    Substantive Reasonableness

Melendez also challenges the substantive reasonableness of his sentence.  Echoing his claims of procedural error, Melendez contends his sentence was substantively unreasonable because it was "unmoored from any particular factor."

The government again argues that Melendez failed to preserve this challenge.  This time, the government argues that the broad objection below could not preserve the specific substantive reasonableness arguments Melendez makes in his opening brief.  We disagree.  Here, Melendez objected to the "excessive[] upward variance" before reiterating his support for the shorter jointly recommended sentence, and we have consistently held that by arguing for a shorter sentence before the district court, a defendant preserves a challenge to the substantive reasonableness of his sentence on appeal.  See, e.g., United States v. Bruzón-Velázquez, 49 F.4th 23, 32 (1st Cir. 2022); Rodriguez-Monserrate, 22 F.4th at 40; United States v. Ramos-David, 16 F.4th 326, 335 (1st Cir. 2021).  We therefore review for abuse of discretion. See Rodriguez-Monserrate, 22 F.4th at 41.

There are a broad range of reasonable outcomes in the sentencing context and our task is simply "to determine whether

the sentence falls within [that permissible range]." Flores-Nater, 62 F.4th at 655 (quoting United States v. Rivera-Morales, 961 F.3d 1, 21 (1st Cir. 2020)). The components of a substantively reasonable sentence are a plausible rationale and a defensible result. United States v. Díaz-Rivera, 957 F.3d 20, 25 (1st Cir. 2020).

We have already established that the court properly predicated Melendez's upwardly variant sentence on the fact that the "crime of violence" required for conviction was a premediated murder, a fact unaccounted for by the guidelines. See supra Section II(A). "[A]n adequate explanation for an upward variance and a plausible rationale for that variance are almost always two sides of the same coin." United States v. Valle-Colón, 21 F.4th 44, 50 (1st Cir. 2021). And this is such a case. Having already concluded that the court provided a sufficient justification for imposing the upwardly variant sentence, we need look no further to find that the rationale here was plausible.

Likewise, for all the reasons we found the variant sentence justified, we also find it defensible. In addition to the serious nature of the offense and Melendez's contribution to it, other sentencing factors contribute to the defensibility of Melendez's 194-month sentence. Factors that bolster the defensibility of the sentence include Melendez's history of

committing crimes while on "escape status," his history of firearms offenses, and his lengthy criminal record.[8]

Having found that the court provided a plausible sentencing rationale and arrived at a defensible result, we conclude that Melendez's 194-month sentence was substantively reasonable. Accordingly, we discern no error.

### III. Conclusion

For the foregoing reasons, Melendez's sentence is **affirmed**.

---

[8] As the court noted at sentencing, had Melendez's criminal history been calculated and factored into his guidelines sentence, Melendez would have been placed in criminal history category IV. Because criminal history was not a factor in his guidelines sentence, the court's rationale for upwardly varying could have properly rested on Melendez's past convictions.