# United States Court of Appeals
## For the First Circuit

No. 22-1116

UNITED STATES OF AMERICA,

Appellee,

v.

WESLEY PORTELL-MÁRQUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Kayatta, Howard, and Thompson,
Circuit Judges.

Héctor Sueiro Álvarez, with whom Eric Alexander Vos, Federal
Public Defender, and Franco L. Pérez-Redondo, Assistant Federal
Public Defender, were on brief, for appellant.

David C. Bornstein, with whom W. Stephen Muldrow, United
States Attorney, Mariana E. Bauzá-Almonte, Assistant United States
Attorney, Chief, Appellate Division, and Julia M. Meconiates,
Assistant United States Attorney, were on brief, for appellee.

February 10, 2023

**HOWARD, Circuit Judge.** Having received the same incarcerative sentence on remand that had been imposed prior to his previous sentencing appeal, Wesley Portell-Márquez ("Portell") challenges the imposition of his sentence of twenty-four months' imprisonment for violating the terms of his supervised release. Concluding that the sentence is both procedurally and substantively reasonable, we affirm.

## I. BACKGROUND

On October 1, 2019, Portell completed a thirty-seven-month term of imprisonment for possession of a firearm following a felony conviction, see 18 U.S.C. § 922(g)(1), and began a three-year term of supervised release. Fifteen months into his term of supervised release, Puerto Rico police officers intervened in a domestic dispute between Portell and his pregnant consensual partner. Portell was charged with two counts of aggravated abuse pursuant to Article 3.2 of Puerto Rico's Domestic Violence law.[1] Portell's probation officer subsequently informed the district court that Portell had violated two separate conditions of his supervised release that prohibited his commission of any federal, state, or local crimes during the period of supervised release. The probation officer's motion summarized the allegations

---

[1] Prior to Portell's revocation hearing in federal court, the state-court complaint against Portell was dismissed pursuant to Puerto Rico's speedy trial requirements.

contained in the state criminal complaint against Portell, including that Portell had pushed and punched his partner and had broken her cell phone.

The district court held a revocation hearing on May 14, 2021. At the hearing, Portell admitted to violating the two conditions of his supervised release, informing the court that "he [wa]s not contesting the violations to the mandatory conditions one and two, which were that he must not commit another crime, in this case Article 3.2 of the Puerto Rico Domestic Violence Law," and that he was not contesting "docket entry 70, the motion filed by the probation officer."

The hearing thus focused primarily on the issue of an appropriate sentence. As to this, Portell argued that, properly categorized, his conduct constituted a grade B violation, that the appropriate guidelines range was eight to fourteen months' imprisonment, and that a sentence of fourteen months was appropriate given "the seriousness of the allegations" which warranted a sentence at "the higher end of the guidelines." Portell further represented to the court that this was his first domestic violence incident and that he was willing to attend couples therapy or anger management courses if the court deemed those necessary to his rehabilitation. On the question of the violation grade, the government deferred to the probation officer, who contended that the violation was a grade A violation. The

government then focused on "the gravity" of Portell's violation, noting that he broke the victim's cell phone; forcefully pushed her with both hands; and punched her in the face, which broke her lip and required her to receive medical attention. The government also stressed that the victim obtained an ex parte protection order based on her fear for her security and indeed her life. Acknowledging that Portell had "accepted that he committed the violations," and weighing that against their seriousness, the government argued for a sentence of eighteen months' imprisonment. Given an opportunity to respond, Portell did not object to the government's discussion or characterization of the facts alleged in the complaint; instead, Portell reiterated that he believed his conduct was a grade B violation and that the seriousness of the offense warranted a sentence at the higher end of the guidelines.

The court determined that Portell's was a grade A violation and calculated his Guidelines incarcerative range to be eighteen to twenty-four months. The court then imposed a sentence of twenty-four months' imprisonment, explaining that the sentence was warranted "[t]o reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and to protect the public from further crimes by Mr. Portell." In doing so, the court specifically noted that "the State Court documents reflect that Mr. Portell physically assaulted his pregnant consensual partner by punching her with his

fist -- punching her mouth with his fist, breaking her cell phone, and pushing her."  Following the announcement of the sentence, Portell objected "to the finding of a grade A violation," reiterated his argument that he had committed only a grade B violation, and, on that sole basis, objected to the substantive and procedural reasonableness of the sentence.

On Portell's appeal to this court, the government conceded that the grading analysis conducted in the district court was erroneous.  We agreed, and in an order of judgment, vacated and remanded to the district court on the grounds that the district court's violation-grading process and conclusion were inconsistent with our circuit's precedent.  United States v. Portell-Márquez, No. 21-1447, 2021 WL 5458605 at *1-2 (1st Cir. Nov. 22, 2021).  In that decision, we specifically noted that "[a]t the final revocation hearing, [Portell] did not challenge the contents of the operative violation report, but he did argue that the violations should be treated as grade B violations for sentencing purposes."  Id. at *1.

On remand, the district court concluded that Portell's was indeed a grade B violation and calculated his guidelines range to be eight to fourteen months.  Portell again argued that a fourteen-month sentence was appropriate and informed the court that he would be receiving treatment for his anger management issues.  The court then explained that it had "taken into

- 5 -

consideration the factors set forth in [18 U.S.C. § 3553(a)], and the seriousness of Mr. Portell's violations" and that it found his violations to "reflect[] his complete lack of respect for the law, the supervision process, and conditions of supervised release imposed by this [c]ourt" and that "his original sentence [for the original firearms offense] did not serve the objective of punishment or deterrence." The court then imposed an upwardly-variant sentence of twenty-four months of imprisonment, the same length it had imposed after the original revocation hearing (and the court also included an additional eighteen month term of supervised release). In doing so, the court reiterated that "the state court documents reflect that Mr. Portell physically assaulted his pregnant consensual partner by pushing her and punching in the mouth with his fist and breaking her cell phone." Portell once again objected to the procedural and substantive reasonableness of the sentence, arguing that it was improper for the court to consider the state-court complaint and that, without the complaint, there was no evidence or basis on which the court could justify the above-guidelines sentence.

## II. DISCUSSION

### A.

We review the sentence imposed following the revocation of supervised release for abuse of discretion. United States v. Wright, 812 F.3d 27, 30 (1st Cir. 2016). Within this abuse of

discretion review, "[w]e review factual findings for clear error, arguments that the sentencing court erred in interpreting or applying the guidelines de novo, and judgment calls for abuse of discretion simpliciter." United States v. Laureano-Pérez, 797 F.3d 45, 80 (1st Cir. 2015) (quoting United States v. Serunjogi, 767 F.3d 132, 142 (1st Cir. 2014)).

## B.

Portell appeals the sentence imposed by the district court as both procedurally and substantively unreasonable, arguing that the court lacked a sufficient basis on which to justify its upwardly-variant sentence. According to Portell, the record was devoid of specific information regarding the conduct underlying his arrest, and thus the sentencing judge necessarily obtained that information from, and premised the variance on, the Spanish-language state-court criminal complaint in violation of the Jones Act. See 48 U.S.C. § 864 ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."); United States v. Millán-Isaac, 749 F.3d 57, 64 (1st Cir. 2014) ("As a consequence [of the Jones Act], federal judges must not consider any untranslated documents placed before them."). Portell's challenge fails, however, because the district court did not rely on the Spanish-language complaint to justify its sentence. The district court instead relied on the probation officer's motion, and, critically,

Portell's admission to the conduct described in that motion which provided a sufficient basis on which the district court justified its sentence.

**i.**

At sentencing, a "court may 'consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.'" United States v. Colón-Maldonado, 953 F.3d 1, 3 (1st Cir. 2020) (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). However, the evidence considered by the district court in determining an appropriate sentence must be reliable. Id. (citing United States v. Portalla, 985 F.2d 621, 622 (1st Cir. 1993)); see also United States v. Mills, 710 F.3d 5, 15 (1st Cir. 2013) ("[T]he court can consider all kinds of relevant information regardless of admissibility at trial (including hearsay that has never been tested by cross-examination), provided it has 'sufficient indicia of reliability to support its probable accuracy.'" (quoting U.S.S.G. § 6A1.3)). "[T]he court has considerable leeway in deciding whether particular evidence is reliable enough for sentencing purposes, and we review only for abuse of discretion.'" Mills, 710 F.3d at 16.

Accordingly, while we have held that "a sentencing court may not rely upon a bare arrest record or mere charges 'unsupported by any admission or some other evidence' . . . [to] vary[] above

- 8 -

the Guidelines based on the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a)," see United States v. Rivera-Ruiz, 43 F.4th 172, 181-82 (1st Cir. 2022) (emphasis added) (quoting United States v. Catillo-Torres, 8 F.4th 68, 71 (1st Cir. 2021)), we have also held that, where the allegations in an arrest report or similar document are buttressed by some other evidence providing the requisite sufficient indicia of reliability that the conduct underlying the arrest occurred, a court is not precluded from considering the arrest and conduct underlying it at sentencing, id. at 184. We have found such indicia of reliability to be present where the defendant either affirmatively admitted to the conduct underlying the arrest or unproven charges, or did not object to a presentence investigation report ("PSR") setting forth the conduct. See id. (finding that "the district court acted within its discretion in relying upon [an administrative] complaint" because the defendant had not objected to the description of events underlying the complaint in a PSR and thus "the record supported a finding that the underlying conduct more likely than not occurred"); see also United States v. Dávila-Bonilla, 968 F.3d 1, 10 (1st Cir. 2020) (no error in district court's consideration of a dismissed local charge at sentencing because the defendant's "unobjected-to admissions to the preparer's report provide some greater indicia of reliability that the actions triggering the arrests occurred") (internal quotations

- 9 -

and citation omitted); <u>United States</u> v. <u>Rodríguez-Reyes</u>, 925 F.3d 558, 565 (1st Cir. 2019) (finding that unobjected-to portions of the defendants' PSR which described earlier arrests "provide[d] 'some greater indicia of reliability,' beyond the mere fact of arrest, 'that the conduct underlying the arrest[s] took place'") (alterations in original) (quoting <u>United States</u> v. <u>Marrero-Pérez</u>, 914 F.3d 20, 24 (1st Cir. 2019)).  Further, "we have held that a sentencing court may consider arrests not leading to convictions where '[t]here is no reason . . . given [defendant's] failure to contest the facts [in the PSR] and the absence of any acquittal, to doubt that these facts occurred.'" <u>Id.</u> (alterations in original) (quoting <u>United States</u> v. <u>Tabares</u>, 951 F.2d 405, 411 (1st Cir. 1991) (Breyer, J.)).

        While these cases primarily dealt with a defendant's admission, or failure to object, to conduct as described in a PSR, we can fathom no principled reason for applying a different rule where, as here, the defendant's admission is instead made to a probation officer's motion identifying violations of supervised release conditions.  In such a situation, a district court may rely on that admission as demonstrating reliably that the conduct alleged occurred, just as we have previously held that it may do so where the admission is made to conduct described in a PSR.

Here, Portell admitted to the conduct alleged in the probation officer's motion and this admission provided the district court with a sufficiently reliable evidentiary basis to conclude that the conduct underlying the arrest occurred and to consider that conduct, as described in the motion and admitted by Portell, at sentencing.

Portell argues that the district court misunderstood the scope of his admission, claiming that while he admitted to violating Article 3.2, and thus the conditions of his supervised release, he did not admit to any specific conduct in violation of Article 3.2. This argument is unavailing and contradicted by the record.

At the revocation hearing, Portell specifically represented to the court that he was not contesting "docket entry 70, the motion filed by the probation officer." Further, Portell's arguments at sentencing were implicitly premised on the facts alleged in the probation officer's motion, with Portell repeatedly acknowledging "the seriousness of his offense" and the appropriateness of a sentence at the high-end of the guidelines range, representing that this was his first domestic violence incident and demonstrating a willingness to attend anger management courses. Portell's reliance on these facts in making his sentencing arguments precludes him from now disclaiming their

validity.  Cf. United States v. Parrilla-Tirado, 22 F.3d 368, 373 (1st Cir. 1994) ("It is the policy of the law to hold litigants to their assurances. . . . '[w]e will not permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so.'") (alteration in original) (quoting United States v. Pellerito, 878 F.2d 1535, 1539 (1st Cir. 1989)).

Furthermore, Portell failed to raise any objection at the initial revocation sentencing hearing when both the government and the court specifically repeated, and extensively discussed, the conduct alleged in the probation officer's motion.  When Portell did object at that hearing, the objection was limited to the court's violation grading methodology and conclusion. Accordingly, when we decided Portell's appeal on that issue we expressed the same understanding as to the scope of Portell's admission as the district court (which Portell now challenges): that "[a]t the final revocation hearing, [Portell] did not challenge the contents of the operative violation report . . ." Portell-Márquez, 2021 WL 5458605 at *1 (emphasis added).

Portell also failed to raise an objection when the district court once again discussed those same facts on remand in advance of handing down its new sentence.  When Portell finally did object to the sentence, and to the court's reliance on the conduct alleged in the probation officer's motion, he specifically

stated that he "did not contest the allegations for sentencing purposes" but nonetheless argued that the court could not rely on those uncontested allegations at sentencing. The flaw in this argument is that it would require a court to permit Portell to admit to the conduct described in the officer's motion and to rely on that conduct for the purposes of his own sentencing arguments, but preclude the court from similarly considering that conduct in crafting its sentence. Portell's challenge is thus without merit and contradicted by the record. His admission to the conduct alleged in the probation officer's motion provided the requisite "indicia of reliability" that the conduct prompting his arrest occurred and it was not an abuse of the court's discretion for the court to consider that conduct at sentencing.

In addition to the scope of his admission, Portell's challenge also focuses on the district court's reference to "the state court documents" as demonstrating that the court nonetheless improperly premised its sentence on the state-court complaint. However, as discussed, the record reveals that the variance was not premised on the state-court documents themselves but was instead based on the probation officer's motion (which summarized the allegations in the state-court documents) and, crucially, Portell's admission to the conduct described therein. Indeed, the court explained as much when Portell objected on these grounds at the second sentencing hearing; the court noted that it considered

that Portell punched his partner in the mouth and, when Portell claimed that conduct had not been proven, responded that "that's what's in the probation officer's motion, which [Portell] did not contest." Accordingly, even if we were to agree with Portell and conclude that the district court's reference to "the state court documents" demonstrates that the court did consider Spanish-language documents -- which we do not -- any Jones Act violation would be harmless, and we would nonetheless affirm the sentence on the basis that the Spanish-language information was merely cumulative of the information to which Portell admitted and which the district court properly considered in justifying its sentence. See Millán-Isaac, 749 F.3d at 64-66 ("[N]ot all Jones Act violations require reversal. . . . [I]f the untranslated evidence is merely cumulative, any prejudice to the parties caused by this court's inability to review untranslated evidence is inconsequential and will not require reversal.") (citations omitted).

Portell's claims of procedural and substantive error are both premised on his arguments that the district court improperly relied on the Spanish-language evidence and otherwise lacked a sufficient basis on which it could justify the variant sentence. Those arguments are, for the reasons discussed above, unavailing. Further, we do not find any other error, procedural or substantive, with the district court's sentencing methodology or the sentence

it imposed. The district court "calculat[ed] the applicable Guidelines Sentencing Range ('GSR'), address[ed] any objections to the probation department's [motion], g[ave] both parties an opportunity to argue for whatever sentence they deem[ed] appropriate, consider[ed] the 18 U.S.C. § 3553(a) sentencing factors, and explain[ed] the reasoning behind the chosen sentence." Laureano-Pérez, 797 F.3d at 80 ("A sentence is procedurally sound so long as the district court complies with th[is] specifically delineated roadmap." (internal quotation marks and citation omitted)). And, the court's variant sentence, premised on the nature of Portell's violation, "reflects a plausible sentencing rationale and a defensible result" and is thus substantively reasonable. United States v. Soto-Soto, 855 F.3d 445, 450 (1st Cir. 2017) (internal quotation marks and citation omitted). **Affirmed.**