# United States Court of Appeals
## For the First Circuit

No. 21-1855

UNITED STATES OF AMERICA,

Appellee,

v.

WILFREDO ISAAC DELGADO, A/K/A EL GORDO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Montecalvo and Lipez, Circuit Judges,
and Burroughs,* District Judge.

Héctor Sueiro-Álvarez, Assistant Federal Public Defender, with whom Eric Alexander Vos, Federal Public Defender, and Franco L. Pérez-Redondo, Assistant Federal Public Defender, Supervisor, Appeals Section, were on brief, for appellant.

Gregory B. Conner, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

July 3, 2024

---

* Of the District of Massachusetts, sitting by designation.

**LIPEZ**, **Circuit Judge**.    While completing a term of supervised release, Wilfredo Isaac-Delgado ("Isaac") tested positive for multiple controlled substances, failed to abide by the regulations of his residential reentry center, and was charged with violating Puerto Rico's domestic violence statute for harassing a former romantic partner.  Isaac's probation officer detailed these actions, each of which violated the conditions of Isaac's supervised release, in two motions to the district court. Those motions requested that the court revoke Isaac's supervised release.

At the beginning of a hearing on the motions, Isaac informed the court that he would "not be contesting the[] violations" described by his probation officer.  Isaac instead identified mitigating circumstances that, in his view, justified a sentence within the applicable Sentencing Guidelines range. Relying on the uncontested representations about Isaac's conduct from the probation officer, the district court imposed a sentence more than three times longer than the high end of the Guidelines range.  Isaac now challenges that sentence as procedurally unreasonable.  Finding no procedural flaw, we affirm the sentence imposed by the district court.

## A. Isaac's Conditions of Supervised Release

In November 2018, Isaac completed a term of imprisonment for federal offenses related to a bank robbery and began serving a five-year term of supervised release. Less than a year later, in August 2019, Isaac's probation officer notified the district court that Isaac had violated two conditions of his release: one that prohibited him from committing another crime and another that required him to follow the instructions of his probation officer. The probation officer explained that Isaac had violated a court-issued restraining order imposed because he had threatened and mistreated a former romantic partner. Despite his probation officer's instructions to the contrary, Isaac continued to contact his former partner and, as a result, he was criminally charged with violating Puerto Rico's domestic violence statute ("Commonwealth charges").

The district court initiated proceedings to consider revoking Isaac's supervised release. However, before Isaac's preliminary revocation hearing, the Commonwealth charges were dismissed. Isaac's probation officer then moved to vacate the revocation proceedings, asking that the court instead add new conditions to Isaac's supervised release. The court granted that request, with Isaac's acquiescence. Among the new conditions was a requirement that Isaac participate in reentry support programs,

including cognitive behavioral treatment services related to domestic violence.

One year later, Isaac's probation officer notified the district court that Isaac had again violated his conditions of release by using controlled substances and failing to follow the instructions of his probation officer. The probation officer reported that Isaac had tested positive for marijuana five times in the past year and had failed to call into his drug testing program on more than sixty occasions. He recommended that Isaac be admitted to a residential reentry center. Isaac agreed, and his conditions of release were modified to include his participation in such a residential reentry program.

## B. Isaac's Violations of Supervised Release

During his short-lived stay at a residential reentry center, however, Isaac failed required drug screens, testing positive for marijuana four times between February and April 2021, and, in one instance, also testing positive for benzodiazepines.

Isaac also continued exhibiting aggressive behavior toward another of his former romantic partners, Johanna Gonzalez-Crespo ("Gonzalez"). In May 2021, staff members at the reentry center heard Isaac insulting a woman over the phone. Two months later, on July 19, 2021, Gonzalez reported to the probation office that Isaac was inundating her with harassing and threatening calls. She explained that, despite blocking his number, she

- 4 -

continued to receive threatening calls from Isaac, who started using the phones of other individuals to insult and intimidate her. The probation office reviewed hostile voicemails left by Isaac and recommended that Gonzalez seek assistance from her local police department.

A week later, on July 26, Gonzalez reached out to the reentry center to report her problems with Isaac. She explained that Isaac had been calling her from different phone numbers and coming to her residence to threaten her family. The following day, Gonzalez filed a police report against Isaac detailing the relevant events, including Isaac's threat that "if she is not with him, she will not be with nobody [sic]."

When police officers went to the reentry center to arrest Isaac, he refused to report to the lobby upon request. He became agitated, slammed electronics, violently kicked a desk, and announced: "If they are coming to arrest me, they have to take me death [sic]." After an hour of negotiations, he surrendered to the police. On July 28, Isaac was again charged with violating Puerto Rico's domestic violence law. Two days later, the probation office received a "failure letter" from the reentry center, reporting that Isaac had violated several of the center's regulations.

Isaac's probation officer notified the district court of Isaac's violations of supervised release stemming from these

events. In two filings ("Docket Entries 108 and 117" or, collectively, "Probation Motions"), the probation officer detailed Isaac's repeated positive tests for marijuana and benzodiazepines, his threats to Gonzalez, and the resulting criminal charges. The Probation Motions also noted Isaac's prior criminal charges involving his mistreatment of two other women. In addition to the 2019 episode described above, Isaac was also arrested in 2008 on criminal domestic violence charges.

Finally, the probation officer explained that Isaac refused medication to treat his anxiety and substance dependence, despite the probation office paying the cost of his prescription medications. The Probation Motions asserted that Isaac's refusal to take these medications "sabotag[ed] his mental health treatment," thus violating his condition of release requiring him to "participate in a mental health program . . . as arranged and approved by [his] U.S. Probation Officer."

Isaac waived his right to a preliminary revocation hearing, and the district court subsequently entered a finding of probable cause "as to all violations included in the motions filed by [Isaac's probation officer] at Dockets No. 108 and 117." The matter proceeded to a final revocation hearing.

## C. Final Revocation Hearing

Isaac began the final revocation hearing by admitting to the violations: "[A]fter review of both the motions of the

Probation Officer notifying violations at docket entry 108 and 117, the Defendant will not be contesting these violations but we would like to be heard before Your Honor pronounces sentencing." Isaac then broadly summarized the allegations, explaining that the Probation Motions allege "four positive results to marijuana and another one to benzo[diazepines] and the other one, basically the Probation Officer informed the Court of a domestic violence case that the Defendant had in State Court."

Isaac then identified mitigating circumstances for the court's consideration in sentencing, explaining that the most recent Commonwealth domestic violence charges involved no force or physical aggression, only threats. And those charges, he noted, were dismissed before the final revocation hearing. Isaac also stressed that an existing restraining order would preclude him from "communicat[ing] with the victim."

Isaac further explained that he had been diagnosed with impulsiveness, anxiety, depression, and insomnia. He stated that, to treat these conditions, he "was taking his medications" and had been attending a mental health clinic every month for nearly a year, even while working. Citing monthly reports from the clinic, Isaac highlighted that he "had taken positive steps toward [his treatment] goals, that he was on time for his appointments[,] and was communicative." And, despite the prior modifications of his release conditions, Isaac noted that "[t]his [was] basically his

- 7 -

first revocation hearing." Isaac's own allocution to the court requested one "last opportunity" to "not go on the way that [he] ha[d] been going," and he asked for a sentence within the applicable Guidelines range of four to ten months of imprisonment.

The government requested a much longer term of imprisonment. Isaac's conduct, the government argued, justified a sentence beyond the Guidelines range because he had harassed his former romantic partner, continuing a pattern of threatening women going back to 2008. Though the Commonwealth charges were eventually dismissed, the government viewed Isaac's multiple arrests for similar conduct as occurring "too many times . . . to be a coincidence." Even accepting that Isaac's conduct came "from a place of mental health," the government asserted "he's not fixing it." On that basis, the government concluded that a prison sentence "closer to three years" was more appropriate than the applicable Guidelines range.

Although the district court acknowledged that the relevant Guidelines range provided for a term of imprisonment of four to ten months, the court nonetheless imposed a prison sentence of thirty-six months -- a sentence more than three times longer than the high end of the applicable Guidelines range. The court justified its significant upward variance because Isaac had "shown that he is unable to comply with the conditions of supervision imposed on him." Specifically, the court explained that Isaac did

not follow the requirements of his mental health and substance abuse treatment programs in that he continually used controlled substances and declined to pick up his prescribed anti-anxiety medications. The court noted that the probation office had spent more than $8,000 providing for Isaac's treatment, including the cost of his medications. Moreover, Isaac had engaged in conduct constituting a crime by threatening his former romantic partner. Thus, the court concluded, Isaac's sentence was necessary to "promote respect for the law, provide just punishment for his violations . . . and to protect the public from additional crimes by Mr. Isaac."

Isaac objected to the sentence as procedurally and substantively unreasonable.[1] In so doing, Isaac again explained that "he was benefitting from treatment" and "manag[ed] to go to every single session for over a year" while holding a stable job. Isaac emphasized that he "underst[ood] what he did was wrong," and once more stated "[h]e did not contest the allegations." But, Isaac concluded, "[his] conduct d[id] not amount to the punishment"

---

[1] Isaac does not advance a substantive reasonableness claim on appeal. See Appellant's Reply Brief at 2, No. 21-1855 (1st Cir. Feb. 3, 2023), ECF No. 48 ("On appeal, Mr. Isaac does not argue he did not violate his conditions of release, or that his sentence was substantively unreasonable. He is challenging the procedural reasonableness of his sentence . . . .").

- 9 -

imposed by the district court.  The court noted the objection for the record.  Isaac now appeals his sentence.[2]

## II.

We review preserved sentencing challenges for abuse of discretion.  United States v. Viloria-Sepulveda, 921 F.3d 5, 8 (1st Cir. 2019).  Unpreserved challenges are subject only to plain error review.  United States v. Bruzón-Velázquez, 49 F.4th 23, 31 (1st Cir. 2022).  "Under the plain error standard, the appellant must show (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  Viloria-Sepulveda, 921 F.3d at 8 n.1 (quoting United States v. Soto-Soto, 855 F.3d 445, 448 (1st Cir. 2017)).

A criminal defendant's sentence must be procedurally and substantively reasonable.  United States v. Contreras-Delgado, 913 F.3d 232, 238 (1st Cir. 2019).  A district court commits a procedural error by, among other things, "selecting a sentence based on clearly erroneous facts."  Id. (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).  In making factual findings, a

---

[2] Isaac was released from incarceration in October 2023. However, he is currently serving a term of supervised release. Isaac thus continues to have a stake in the outcome of this appeal because "[i]f we were to determine that his incarcerative sentence was unreasonable, he could seek equitable relief."  United States v. Reyes-Barreto, 24 F.4th 82, 85 (1st Cir. 2022).

sentencing court may consider evidence not usually admissible in a criminal trial. See United States v. Colón-Maldonado, 953 F.3d 1, 3 (1st Cir. 2020). That said, a court may only consider reliable evidence in determining a sentence. Id.; see also United States v. Mills, 710 F.3d 5, 15 (1st Cir. 2013) ("[T]he court can consider all kinds of relevant information regardless of admissibility at trial (including hearsay that has never been tested by cross-examination), provided it has 'sufficient indicia of reliability to support its probable accuracy.'" (quoting U.S.S.G. § 6A1.3(a))).

## III.

Isaac challenges the procedural reasonableness of his sentence on two grounds. First, he argues that the district court based its sentence on impermissible factual findings. Second, he claims that the district court failed to consider relevant mitigating evidence as required by 18 U.S.C. § 3553(a). We address each argument in turn.

### A. Factual Basis for the Sentence

#### 1. Medications

Isaac contends that the district court erred in finding that he was "not taking or even picking up the mental health [medication] with which he was prescribed for his anxiety disorder." Isaac notes that, during the final revocation hearing, he told the district court that "he was taking his medications for

[his] mental health treatment." Because the government never disputed that statement, Isaac insists the district court erred in making a contrary finding absent any evidence on the issue.

As an initial matter, we note that the parties dispute whether Isaac preserved his challenge concerning the district court's reference to his medication regimen. If not, we would review his argument under the plain error standard. However, we need not resolve that issue because Isaac cannot prevail even if we grant him the benefit of reviewing the district court's decision for abuse of discretion, United States v. Polaco-Hance, 103 F.4th 95, 100 (1st Cir. 2024), the more favorable standard of review.

By admitting to the violations detailed in the Probation Motions, Isaac himself provided the district court with a sufficiently reliable basis for the factual finding regarding his prescribed medication. True, Isaac did not mention his medication regimen in his quick summary of the Probation Motions at the beginning of the hearing. However, both before and after that summary, Isaac provided a broad, unqualified statement that he was not contesting the violations described in the Probation Motions. In addition to detailing how Isaac failed several drug tests and was arrested multiple times on allegations of domestic violence, those motions explained that Isaac had "sabotaged his mental health treatment" by, among other things, "refus[ing] his medication paid [for] by the probation office." It is well established that a

defendant's admission to certain conduct provides a sufficiently reliable basis for a court to consider the admitted-to conduct during sentencing, and the district court was therefore entitled to rely on Isaac's concession. See United States v. Rivera-Ruiz, 43 F.4th 172, 184 (1st Cir. 2022); see also United States v. Dávila-Bonilla, 968 F.3d 1, 10 (1st Cir. 2020) (explaining that a district court did not err in considering a local charge that did not result in conviction because the defendant's admissions in an unobjected-to presentence report ("PSR") "provide some greater indicia of reliability that the actions triggering the arrests occurred" (alteration and quotation marks omitted) (quoting United States v. Rodríguez-Reyes, 925 F.3d 558, 565 (1st Cir. 2019))).

Perhaps recognizing that district courts are generally allowed to rely on such admissions, Isaac instead focuses his argument on the scope of his concession. Isaac contends that, although he accepted responsibility for violating his conditions of release, he never made a blanket admission to every underlying factual allegation detailed in the Probation Motions. He asserts that, by later telling the sentencing court he "was taking his medications," he had in fact disputed the contrary representations found in the Probation Motions. And because those representations were disputed, Isaac concludes that the district court abused its discretion in finding, without evidence, that he was not taking his medications.

- 13 -

Isaac's position is unsupported by the record and precluded by our precedent.  In United States v. Portell-Márquez, 59 F.4th 533 (1st Cir. 2023), for example, Portell was charged with violating Puerto Rico's domestic violence law while on supervised release.  Id. at 535.  As here, Portell's Commonwealth charges were dismissed before his revocation hearing, but the probation officer's motion still described the altercation underlying his arrest.  Id. at 535 n.1.  At his first revocation hearing, Portell similarly told the court that he did not contest the violations and, more specifically, that "he was not contesting . . . the [docketed] motion filed by the probation officer."  Id. at 535 (quotation marks omitted).  For reasons unrelated to the present issue, we vacated Portell's sentence from his first revocation hearing.[3]  On remand, in his second revocation hearing, Portell again did not contest the violations as set forth in his probation officer's motion.  He instead argued, like Isaac, that a Guidelines sentence was appropriate and "informed the court

_____

[3] During his first revocation hearing, Portell urged the district court to find that his conduct underlying the arrest constituted a "grade B" violation, which carries a lower Guidelines range than a "grade A" violation.  See Portell-Márquez, 59 F.4th at 536.  The district court determined that Portell's conduct constituted a grade A violation, and Portell appealed the resulting sentence.  In Portell's first appeal to this court, the government conceded the district court's grading analysis was erroneous, so we vacated Portell's sentence and remanded the case to the district court for another revocation hearing.  See United States v. Portell-Márquez, No. 21-1447, 2021 WL 5458605, at *1-2 (1st Cir. Nov. 22, 2021).

that he would be receiving treatment for his anger management issues." Id. at 536. The district court imposed an upwardly variant sentence based on the conduct described in the probation officer's motion, and Portell again appealed his sentence.

In affirming, we explained that district courts "may rely on [a defendant's] admission as demonstrating reliably that the conduct alleged [in a probation officer's motion] occurred, just as we have previously held that it may do so where the admission is made to conduct described in a PSR." Id. at 538. Like Isaac, Portell had asserted "that the district court misunderstood the scope of his admission, claiming that while he admitted to violating [Puerto Rico's domestic violence statute], and thus the conditions of his supervised release, he did not admit to any specific conduct in violation of [that statute]." Id. We rejected that argument because Portell told the court that he was "not contesting" his probation officer's motion, which detailed the facts at issue. Id. Moreover, Portell's arguments in favor of mitigation at sentencing "were implicitly premised on the facts alleged in the probation officer's motion," so he could not "disclaim[] their validity" on appeal. Id.

Isaac's admission here was substantively identical to the admission in Portell-Márquez. Again, Isaac categorically stated that he was not contesting the violations found in the Probation Motions; his only request was that he "be heard before

[the district court] pronounce[d] sentencing." By accepting responsibility for his non-compliant conduct, Isaac appears to have made a reasonable strategic choice to glide quickly through the "guilt or violation-determination phase" of the hearing, focusing instead on mitigation arguments in hopes of a more lenient sentence. See Colón-Maldonado, 953 F.3d at 8 (describing the division in revocation hearings between "the guilt or violation-determination phase" and "the sentencing phase"). Isaac cannot now disclaim his admission simply because his mitigation arguments did not result in the sentence he requested.

We do not view Isaac's passing comment that he "was taking his medications" as revoking or otherwise qualifying his broad admission at the outset of the revocation hearing. If Isaac wanted to walk back his unqualified admission, he needed to do so expressly. Indeed, Isaac's concluding remarks from the revocation hearing reconfirmed his initial admission. Despite having stated that he "was taking his medications," Isaac later emphasized that "he did not contest the allegations."[4] The district court was thus entitled to rely on the details in the Probation Motions in finalizing Isaac's sentence.

---

[4] To be precise, Isaac stated that "he did not contest the allegations" in noting his objection to the district court's sentence.

## 2. Cost of Treatment

Isaac next argues that the district court erred in noting that the probation office had spent more than $8,000 on his treatment, including the cost of his medications. More specifically, Isaac draws our attention to the following comments by the district court at sentencing:

> During his period of supervision, the Probation Officer afforded Mr. Isaac with mental and substance abuse treatment with which Mr. Isaac did not follow by continuously using controlled substances and by not taking or even picking up the mental health [medication] with which he was prescribed for his anxiety disorder. He preferred to self-medicate by using marijuana.
>
> The Probation Office[] has spent over $8,000 providing Mr. Isaac with the substance abuse and mental health treatment including paying for prescription drugs to absolutely no avail.
>
> In addition, Mr. Isaac has engaged in conduct constituting a crime and failed the Residential Reentry Center, as ordered by the Court, verbally harassed his former consensual partner, hundreds of times, from different telephones and going to her work place with convicted felons and threatening her and her children. He has also become violent towards third parties.

Though the uncontested Probation Motions explained that the probation office had paid for Isaac's substance-abuse and mental-health treatment, including his medications, the $8,000 price tag is not in the record. Isaac contends that the district court erred by making a factual finding about the cost of his treatment sua sponte. However, Isaac failed to object to any finding by the district court concerning the cost of his treatment.

We therefore review this argument for plain error. See United States v. Ramos-Carreras, 59 F.4th 1, 5 (1st Cir. 2023) (applying plain error standard where defendant "did not raise any objection to the court's description of the alleged conduct"); see also Soto-Soto, 855 F.3d at 448 & n.1 (applying plain error standard because only an "[in]sufficiently specific," "general objection" was raised to the court's comments later challenged on appeal).[5]

The district court's reference to the off-record $8,000 figure does give us pause. A sentencing court may rely on off-record evidence from a probation officer only if "new facts relevant to the sentencing calculus . . . are disclosed to the parties and subjected to whatever adversarial testing may be appropriate." United States v. Bramley, 847 F.3d 1, 7 (1st Cir. 2017). Here, although Isaac acknowledges that he was aware of the $8,000 cost of his treatment because "a similar monetary figure is

---

[5] Isaac argues in a Rule 28(j) letter that our decision in United States v. Teixeira, 62 F.4th 10 (1st Cir. 2023), requires us to apply an abuse of discretion standard where counsel did not have a sufficient opportunity to object to a particular ruling. We disagree with the applicability of that precedent. The district court in Teixeira, after making the relevant ruling, "did not invite comments from the lawyers" before moving to a different phase of the proceeding and then ending the hearing. Id. at 18. We took a practical view of those circumstances and held that a lawyer need not "[i]nterrupt[] a judge in mid-stride" to properly preserve an objection. Id. In contrast, the district court here affirmatively gave Isaac an opportunity to object to the sentence. Indeed, Isaac used that opportunity to contest the court's lack of consideration of his mitigation-related arguments. See infra Section III.B.

- 18 -

found in the disclosures that Probation made in preparation for the final revocation hearing,"[6] it is difficult to see how Isaac had a meaningful opportunity to test that figure in an adversarial forum. After all, the first and only mention of the $8,000 during the proceeding was by the district court just before it pronounced Isaac's sentence.

Ultimately, however, we need not resolve the adversarial-testing issue because nothing in the record suggests that the $8,000 cost of treatment affected the length of Isaac's sentence. Isaac therefore cannot satisfy the third element of plain error review, which requires an appellant to show the purported error "affected the outcome of the district court proceedings." United States v. Gilman, 478 F.3d 440, 447 (1st Cir. 2007) (quoting United States v. Olano, 507 U.S. 725, 734 (1993)).

In explaining its sentence, the district court stressed that Isaac's substance-abuse and mental-health treatment had been unsuccessful, even with financial assistance from the probation

---

[6] Neither the district court's docket nor the record on appeal reveals how these disclosures were made. Thus, we may only speculate as to how the district court learned of the $8,000 figure. The court's local rules recommend that disclosures related to revocation proceedings be made "via email when possible." L. Crim. R. 132.1(c) (D.P.R. 2023). Hence, the district court may have been included on email correspondence containing the relevant disclosures. Alternatively, Isaac's probation officer may have mentioned the $8,000 figure in an ex parte discussion with the court.

office, given Isaac's multiple positive drug tests and allegations of harassment. Viewed in context, the district court's consideration of that admitted-to conduct was unrelated to the amount of money the probation office had spent on Isaac's treatment. For the district court, the bottom-line was that Isaac's treatment appeared to be doing little to stem his concerning conduct. The specific cost of that treatment was a superfluous detail unconnected to the justifications for the sentence. Accordingly, we cannot say that, "but for" the district court's consideration of the $8,000 figure, "the district court would have imposed a different, more favorable sentence." Id. (quoting United States v. Turbides-Leonardo, 468 F.3d 34, 39 (1st Cir. 2006)); see also United States v. Padilla, 415 F.3d 211, 221 (1st Cir. 2005) (en banc) ("[T]he proponent -- the party asserting plain error -- must show 'a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." (second alteration in original) (quoting United States v. Dominguez Benitez, 542 U.S. 74, 82 (2004))).

In sum, we see no plain error in the district court's factual findings related to Isaac's sentence.

**B. Consideration of Section 3553(a) Factors**

Under 18 U.S.C. § 3553(a)(1), a sentencing court must consider, among other things, "the history and characteristics of the defendant" in determining the appropriate sentence. Isaac

argues the district court failed to evaluate his specific history and characteristics because the court pronounced his sentence without mentioning his clinical attendance record, positive treatment reports, or employment status. Isaac objected to his sentence on the same basis. We review this preserved claim under an abuse of discretion standard. See Viloria-Sepulveda, 921 F.3d at 8.

It is true that the district court did not engage in a point-by-point analysis of each argument Isaac raised in favor of mitigation. But we have never required district courts to rebut a defendant's sentencing arguments at such a granular level. See United States v. Landrón-Class, 696 F.3d 62, 78 (1st Cir. 2012) ("[A] sentencing court is not required to address frontally every argument advanced by the parties, nor need it dissect every factor made relevant by 18 U.S.C. § 3553." (quoting Turbides-Leonardo, 468 F.3d at 40-41)). To the contrary, "[w]hen a defendant has identified potentially mitigating sentencing factors and those factors are thoroughly debated at sentencing, the fact that the court did not explicitly mention them during the sentencing hearing suggests they were unconvincing, not ignored." United States v. Coplin-Benjamin, 79 F.4th 36, 43 (1st Cir. 2023) (quotation marks omitted) (quoting United States v. Díaz-Lugo, 963 F.3d 145, 152 (1st Cir. 2020)).

Here, the district court satisfied its obligations under § 3553(a).  The court began its decision by stating on the record that it had "taken into consideration the factors set forth in Title 18, United States Code Section 3553(a) and the seriousness of Mr. Isaac's violations."  Though we do not give much weight to that boilerplate pronouncement, the court then properly proceeded to engage with Isaac's broader argument regarding the efficacy of his medical treatment.  In other words, the district court distilled most of Isaac's arguments as standing for the proposition that his mental health and substance abuse treatment was working. The district court considered and rejected that argument by noting that Isaac had been afforded treatment "to absolutely no avail." That is because, the court explained, Isaac had admitted to "continuously using controlled substances" and "harass[ing] his former consensual partner[] hundreds of times."  The court continued by noting that Isaac "ha[d] also become violent towards third parties," as evident from his standoff in the residential center during his most recent arrest.

These observations by the district court directly address Isaac's history and characteristics as required by § 3553(a)(1).  A district court may commit procedural error by "failing to consider the § 3553(a) factors," Gall, 552 U.S. at 51, but the depth of a district court's consideration of those factors is typically a matter of discretion.  Isaac's assertion that the

district court should have rebutted his arguments with more specificity does not demonstrate an abuse of that discretion. See Coplin-Benjamin, 79 F.4th at 43. Though the district court could have provided more detail in justifying Isaac's sentence, its explanation of the chosen sentence was nonetheless adequate. Cf. Gall, 552 U.S. at 51 (noting a district court may abuse its discretion by failing to explain why a sentence deviated from the Guidelines range). Hence, Isaac has failed to show that the district court abused its discretion in fashioning his sentence. We thus affirm the sentence imposed by the district court.

So ordered.