**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

---

No. 23-1304

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERTO CARLOS RECAREY-SALAS,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

---

Before

Barron, Chief Judge,
Thompson and Gelpí, Circuit Judges.

---

Leigh Ann Webster, with whom Strickland Webster, LLC was on brief, for appellant.

Gabriella S. Paglieri, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Jeniffer Veléz Perez, Assistant United States Attorney, were on brief, for appellee.

---

January 2, 2025

---

THOMPSON, **Circuit Judge**.  Roberto Carlos Recarey-Salas ("Recarey") was serving a term of supervised release when he was involved in a car accident.  According to motions filed by his probation officer, information gathered at the scene of the accident showed that Recarey had violated the conditions of his release by possessing a firearm, ammunition, and controlled substances.  At his sentencing hearing, Recarey admitted to possessing ammunition.  On appeal, he says that the district court incorrectly treated him as admitting to all of the violations asserted by probation in its revocation motion, and, also, improperly imposed a ten-month, top-of-the-guidelines-range sentence because it considered non-ammunition-related violations.  As we explain below, we vacate both the district court's judgment and its sentence as to revocation of supervised release, and remand for further proceedings with instructions to correct the basis for revoking release and clarify the grounds for imposing sentence. We keep our discussion short, as we write solely for the parties.

To set the stage, we begin with the violative conduct identified by Recarey's probation officer.  As stated in probation's first motion to the district court, a paramedic, following his (or her) arrival at the accident scene, discovered Recarey in the driver's seat of the vehicle with a firearm between his legs.  The paramedic then alerted a nearby police officer of the discovery, but by the time the officer and paramedic returned

- 2 -

to the vehicle the gun had disappeared. The police, however, seized two loaded magazines (ammunition, not reading material) and four cell phones from the car. The probation officer moved for revocation on the basis that Recarey had violated conditions of his release related to possession of firearms and ammunition (as well as to commission of a crime). In a second motion, the probation officer reported that he had reviewed data extracted from one of the recovered cell phones, which included (1) a video showing Recarey "filming what appears to be a large bag of Marihuana[,] . . . manipulating the drug and describing some of its features" and (2) photos depicting Recarey "with large quantities of Marihuana" and drug paraphernalia. The second motion charged Recarey with additional violations related to the possession of controlled substances.

In addition to the revocation motions filed by his probation officer, Recarey was separately charged with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1) and, in due course, pled guilty to that charge. The district court combined the sentencing hearing on the new conviction with the revocation proceedings. The probation officer did not testify at the hearing. After imposing a sentence of 30 months for the new conviction, the district court turned to revocation, summarized the contents of the two probation motions, and engaged in the following exchange with defense counsel:

> THE COURT: . . . In essence, here what we have is that we are dealing with a prior conviction for the ammunition possession as the strongest basis for revocation. So I am asking Defense Counsel here, is the Defendant challenging or accepting?
>
> MR. CARRION: Your Honor, as it relates to the most serious allegation, the Defendant, Mr. Recarey, is accepting.
>
> THE COURT: So that's a grade B violation.
>
> MR. CARRION: Grade B violation, based on his conviction, Your Honor.

Although defense counsel's reference to "the most serious allegation" below was perhaps somewhat ambiguous, both parties agree that Recarey admitted to violations related to his possession of ammunition, but not to any other violations. In other words, the parties agree that Recarey did not admit to possessing a gun or drugs in violation of his conditions.

On appeal, Recarey asserts that the district court nevertheless treated all violations as admitted, and thus revoked his supervised release and sentenced him on account of conduct that was neither admitted to nor proven by a preponderance of the evidence. In particular, Recarey points to the court's written judgment issued after the hearing, which stated that Recarey "admitted guilt to" a list of violations that included all conditions identified in the two motions by his probation officer. He asks us to vacate the district court's judgment and sentence and remand the case for resentencing. We easily dispatch with

- 4 -

Recarey's request to vacate the judgment. At oral argument, the government conceded that it was "not contesting" that "Recarey would be entitled to an amended judgment" correctly reflecting which violations he actually admitted to.[1] Given the parties' agreement, it seems clear to us that the written judgment of revocation of supervised release ought to be vacated.

We turn then to the more difficult question posed by Recarey's appeal: whether the district court's ten-month, top-of-the-guidelines-range sentence (in excess of the parties' joint recommendation of four months) should also be vacated. To support his argument that the sentence was tainted by the district court's consideration of conduct he had not admitted to, Recarey highlights this portion of the district court's explanation for its sentence:

> [I]t appears that Mr. Recarey has shown that he was unable to comply with the conditions of supervised release and remain within a law-abiding frame.
>
> Certainly, the offense for which he was charged, as I mentioned, we have already discussed, and the circumstances under which

---

[1] The government's concession is not surprising in light of its assertion that "the district court's expressed words" during the revocation proceeding demonstrate that it only revoked on the ammunition conviction. As the government acknowledged during oral argument, when "a district court's oral sentence materially conflicts with its subsequent written expression," the oral expression generally prevails. United States v. Ortiz-Torres, 449 F.3d 61, 74 (1st Cir. 2006) (recognizing general rule in light of criminal defendant's right to be present at sentencing). Thus, even under the government's interpretation, the written judgment contains an error.

> he was arrested, as well as the type of
> evidence that was found on his cell phone.

According to Recarey, the district court's reference to the "cell phone" evidence indicates that the controlled substance violations, which the district court believed had been admitted to, tainted the district court's sentence. He points out that, absent his admission, the only source of information regarding the contents of the cell phone was the description in the probation officer's second motion, which he characterizes as "bare allegations" in a "charging document."[2] The government responds that, regardless of any misunderstanding that the district court may (or may not) have had regarding the basis for revoking release, during sentencing the district court, in its non-discretionary procedural determination, applied the correct grade B guidelines range and thereafter, was entitled to consider information about the contents of the cell phone because it was sufficiently reliable.

In rendering its sentence, we observe the district court made no express finding regarding the reliability of the "cell

---

[2] Recarey appeared to accept the government's assertion that because he did not object to the court's consideration of the cell phone evidence, his arguments were not preserved, and plain error review applies. At oral argument, however, Recarey backtracked and asserted that he did not have sufficient opportunity to object below, especially as to the revocation proceeding, and thus plain error did not apply. As we explain, given our inability to glean the district court's revocation and sentencing rationale, we need not referee this standard-of-review jockeying at this time.

phone evidence" (or more precisely, the probation officer's motion recounting what had been discovered on the cell phone). See United States v. Lacouture, 835 F.3d 187, 191 (1st Cir. 2016) (vacating sentence and remanding for clarification where district court's "sparse discussion" at sentencing did not make clear whether court found out-of-court statements reliable and why). Absent a definitive statement by the district court as to the evidentiary support for its sentence, the written judgment's indication that all violations were admitted to suggests that the district court's sentencing calculus may have incorporated information whose reliability had not been established. See United States v. Serrano-Berríos, 38 F.4th 246, 251 (1st Cir. 2022) (explaining that district court's reference to state law violations in its written judgment "renders unreliable [the] otherwise controlling assumption that the court excluded from its thinking the express comments it made [about the state law violations] right before formally explaining its sentence").

In an effort to fill in the missing inquiry, the government, on appeal, cites to cases in which we upheld the district court's apparent reliance on information contained in probation officer's motions and presentence investigation reports ("PSRs"). See, e.g., United States v. Delgado, 106 F.4th 185, 192-94 (1st Cir. 2024); United States v. Ramirez-Ayala, 101 F.4th 80, 88 (1st Cir. 2024); United States v. Portell-Márquez, 59 F.4th

533, 538-40 (1st Cir. 2023). And it says we should do the same here. But setting aside any other potentially relevant distinctions between those cases and the present one,[3] the problem here is that we cannot tell on the record before us what the district court relied on in the first place or why it concluded such evidence was reliable. For instance, the government offers that the district court could have relied on the unobjected-to PSR for information about the violations Recarey did not admit to. But as Recarey noted at oral argument, the PSR only states that cell phones were found in Recarey's vehicle and importantly, it does not describe the contents of the phone.

From this record, it is certainly possible that the district court did as the government says: *i.e.*, revoked supervised release only on the ammunition violation and then considered the "cell phone" evidence at sentencing because it thought that probation's motions were sufficiently reliable. But it is also plausible that the district court considered probation's motions

---

[3] For instance, we are not convinced that this case is exactly like Portell-Márquez. The defendant there "admitted to violating" Puerto Rico's domestic violence law, but then argued he "did not admit to any specific conduct in violation of" that same law. 59 F.4th at 538. Recarey's position, by contrast, is that he admitted to some violations, but not others. Nor, to give another example, does it appear that Recarey, like the defendant in Delgado, "provided a broad, unqualified statement that he was not contesting the violations described in the Probation Motions." 106 F.4th at 192. Because we cannot discern on what basis the district court believed it was relying, we say no more.

"evidence" of Recarey's violative conduct because it wrongly believed that Recarey was admitting to all violations and, from there, revoked Recarey's release and sentenced him without needing to find that any particular conduct had been reliably proven. The conflicting plausible interpretations of the district court's reasoning frustrates our ability to conduct meaningful appellate review. See United States v. Carrión-Meléndez, 26 F.4th 508, 513 (1st Cir. 2022) (citing United States v. Gilman, 478 F.3d 440, 446-47 (1st Cir. 2007)) (concluding that remand for clarification was "prudent" where district court did not "clearly stat[e]" whether allegation in PSR influenced its decision to apply sentencing enhancement).[4]

Given the ambiguities in the record, the government's concession that Recarey is entitled to at least an amended written judgment, and the risk that a possible error impacted Recarey's sentence, we vacate the judgment and sentence as to revocation of supervised release and remand for the district court to hold

---

[4] Without understanding what the district court did and why, we cannot decide whether that reliance was erroneous or not under any lens of appellate review. Indeed, even on plain error review as the government urges is applicable, the obviousness of the error and the potential for prejudice would depend on what error there is, if any, in the first place. See United States v. Figueroa-Roman, No. 20-1170, 2024 WL 3458104, at *3 (1st Cir. July 18, 2024) (unpublished) (recognizing that conflicting plausible interpretations of the district court's sentencing rationale can have "downstream effects . . . on our lens of review").

further proceedings, re-enter a judgment, and resentence Recarey based on the existing factual record.[5]  In doing so, the district court is instructed to correct the basis for revocation and clarify the grounds supporting the associated sentence.  See United States v. Ramírez, 708 F.3d 295, 310 (1st Cir. 2013) (vacating sentence and remanding for clarification where written judgments seemed to conflict with district judge's ambiguous statements at hearing); United States v. Nuñez-Rodriguez, 92 F.3d 14, 23 (1st Cir. 1996) (vacating sentence and remanding for clarification where district court's remarks created ambiguity as to whether adjustment was disallowed for improper reason).

To clarify, at this juncture, our only determination is that our ability to conduct meaningful review, dependent upon an accurate understanding of what the district court did and why, is hampered by the current state of the record.  Unlike in other

---

[5] Given the nature of our remand, which is for the purpose of clarifying the district court's intent, we do not think that remand warrants a second bite at the apple for either party to introduce new evidence.  See United States v. Coplin, 68 F.3d 455 (1st Cir. 1995) (per curiam) (unpublished) (declining to allow defendant to introduce new evidence at resentencing where defendant "had a full opportunity to present mitigating evidence . . . when he was initially sentenced" and "[t]he technical nature of our remand did not change the nature of the information relevant to sentencing"); see also United States v. Reyes-Rivas, 909 F.3d 466, 470 n.3 (1st Cir. 2018) (remanding for resentencing on existing record where government had incentive and opportunity in first instance to ensure district court had evidentiary record to support sentence).  This is especially so because it does not appear that either party lacked adequate incentive and opportunity to introduce evidence supporting its position at the original hearing.

instances in which we are sometimes able to resolve an appeal due to our ability to infer the district court's meaning in the absence of an explicit explanation, see, e.g., United States v. Colón-Cordero, 91 F.4th 41, 51 (1st Cir. 2024), we are unable to confidently determine what its intention was in this case. We take no position on the other issues disputed in the parties' briefs, including whether the record before the district court provided a sufficiently reliable basis for finding that Recarey possessed a gun or marijuana for either revocation or sentencing purposes.

We remand for further proceedings consistent with this opinion. This panel retains jurisdiction over this matter.